Filing # 68003440 E-Filed 02/15/2018 10:58:36 AM

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. *2018- 4766 CA 01*

A&E ADVENTURES LLC, a Florida limited
liability company, and M&A GROUP, LLC, a
Florida limited liability company,

   Plaintiffs,

            CLASS REPRESENTATION

v.

ORACLE AMERICA, INC., a Delaware
corporation,

   Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, A&E ADVENTURES LLC, a Florida limited liability company ("**A&E**"), and

M&A GROUP, LLC, a Florida limited liability company ("**M&A**") (collectively, the "**Plaintiffs**"),

file this Class Action Complaint on behalf of themselves and a similarly situated individuals

pursuant to Rule 1.220, Fla. R. Civ. P., against Defendant, ORACLE AMERICA, INC., a Delaware

corporation ("**Oracle**"), and allege:

### Jurisdiction, Parties, and Venue

1.  This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00),

exclusive of interest, attorneys' fees, and costs, over which this Court has jurisdiction pursuant to

Fla. Stat. § 26.012.

2.  A&E is a Florida limited liability company whose principal place of business is in

Broward County, Florida.

1

3.      M&A is a Florida limited liability company whose principal place of business is in Broward County, Florida.

4.      Oracle is a Delaware corporation whose principal place of business is in Redwood Shores, California, and who maintains an agent or other representative in Miami-Dade County, Florida.

5.      Venue is proper in Miami-Dade County, Florida because Oracle has an agent or other representative in said county.

<u>**General Allegations**</u>

6.      On or about September 8, 2014, Oracle acquired Micros Systems, Inc. ("**Micros**"), the manufacturer of the Restaurant Enterprise Solution 3700 Point-of-Sale system (the "**RES 3700**").

7.      The RES 3700—whose uses include the processing of food and beverage orders and payments—is among the most widely-used point-of-sale systems in the food, beverage, and hospitality industry worldwide

8.      Since its acquisition of Micros, Oracle has purposefully and knowingly engaged in a deliberate and purposeful scheme to force owners of the RES 3700 to abandon that system and upgrade (at a substantial cost) to Oracle's subscription-based Simphony Point-of-Sale system ("**Simphony**").

9.      As discussed below, in furtherance of that scheme, Oracle has: (1) failed and refused to provide adequate support to operators of the RES 3700; (2) taken "Red Keys" – USB drives containing license code enabling upgrades to the RES 3700's software – from users, thereby preventing them from upgrading their RES 3700 systems; (3) failed to provide support for credit and debit cards containing computer chips (known as "**EMV**," which stands for Europay,

MasterCard, Visa), the new global standard in payment security; (4) refused to acknowledge the validity of licenses for RES 3700 software purchased from and delivered by Micros/Oracle; and (5) prevented operators of the RES 3700 from obtaining necessary support from third parties.

10.     Oracle has deceptively held itself out as providing support for the RES 3700 when, in fact, it was engaged in a deliberate scheme to deprive the owners of those systems with adequate support in order to force them to upgrade to Simphony.

<u>**Allegations Specific to Plaintiffs**</u>

**A.     <u>Plaintiffs' Acquisition and Deployment of RES 3700 Systems</u>**

11.     Plaintiffs own and operate, among other businesses, a number of family entertainment centers in Florida.

12.     In early 2010, Plaintiffs acquired five (5) RES 3700 systems (the "**Systems**").

13.     On or about April 23, 2010, A&E and Micros entered into those certain Sales Contracts to deploy one (1) of the Systems at A&E's Miami, Florida center and one (1) of the Systems at A&E's Tampa, Florida center.  A true and correct copy of the Sales Contracts are attached as Composite Exhibit "A."

14.     The Sales Contracts provide in relevant part:

Upon payment in full of all sums due under this Sales Contract, MICROS grants to [A&E] a nonexclusive nontransferable license to use the software identified on the first page of this Sales Contract . . . .

15.     At the suggestion of Micros's agents, for each of their five (5) Systems, Plaintiffs purchased a "Red Key" – a USB drive containing license code enabling upgrades to the System's software.

16.     Subsequent to Plaintiffs' acquisition of these "Red Keys," A&E engaged Micros to perform various and regular necessary software upgrades on A&E's Miami and Tampa Systems, which Micros performed using said "Red Keys."

**B.**   **Oracle's Acquisition of Micros**

17.   On or about September 8, 2014, Oracle acquired Micros, and thereby succeeded to Micros's rights and obligations under the Sales Contracts.

**C.**   **Oracle's Deficient Deployment of Fort Myers System**

18.   On or about October 9, 2015, M&A engaged Oracle to deploy one of the five (5) Systems at its Fort Myers, Florida center.  (See Invoice, a true and correct copy of which attached as Exhibit "B.")

19.   The services provided by Oracle were deficient, however, as the Fort Myers System's software has malfunctioned continuously since that time.

20.   M&A notified Oracle of these malfunctions immediately after the Fort Myers System's deployment.

21.   On or about December 9, 2015, M&A engaged Oracle, pursuant to the terms of that certain Executable Quote (a true and correct copy of which is attached as Exhibit "C"), to remedy the software malfunctions affecting the now deployed Fort Myers System.

22.   Similar to the April 23, 2010 Sales Contract with Micros, the Oracle Executable Quote provides in relevant part:

> Upon payment for Services, You have the non-exclusive, non-assignable, royalty free, perpetual, limited right to use for Your internal business operations anything developed by Oracle and delivered to You under this order . . . .

23.   Oracle billed M&A for sixteen (16) hours of service it claimed to have performed on the Fort Myers System's software between December 2015 and January 2016.  (See Invoice, a true and correct copy of which is attached as Exhibit "D.")

24.   Those services, however, were also deficient, as the Fort Myers System's software subsequently continued malfunctioning.

**D.**     **Oracle's Upgrade of Miami and Tampa System Software**

25.     During the summer of 2016, A&E engaged Oracle to perform software upgrades on the Miami and Tampa Systems.

26.     Oracle performed those software upgrades and billed A&E for nineteen (19) hours of service it claimed to have performed on each of the Miami and Tampa Systems.  (See Invoices, true and correct copies of which are attached as Composite Exhibit "E.")

**E.**     **Oracle's Attempted Repairs of Ft. Myers System Software**

27.     On or about February 15, 2017, M&A engaged Oracle, pursuant to the terms of that certain Ordering Document (a true and correct copy of which is attached as Exhibit "F"), to repair and de-bug the Fort Myers System's software.

28.     Not only did Oracle's technicians fail to correct the Fort Myers System's software malfunctions, the work Oracle performed caused the System to crash, resulting in M&A's total inability to complete any transactions at its Fort Myers center the weekend of March 25, 2017, which in turn resulted in a substantial loss of revenue by M&A.

29.     Although Oracle technicians were subsequently able to get the Fort Myers System operational, they were unable to remedy the System's software malfunctions, which continue to this day.

30.     Despite demand, Oracle has failed and refused to remedy its defective work performed on the Fort Myers System's software.

**F.**     **Oracle's Refusal to Verify Plaintiffs' Software Licenses**

31.     Dissatisfied with Oracle's failure and refusal to perform the work necessary to correct the Oracle-deployed Fort Myers System's software malfunctions, Plaintiffs have attempted

to engage third-party Postec, Inc. ("**Postec**") to repair the Fort Myers System's software, and to deploy Plaintiffs' remaining two (2) unused Systems at new locations.

32.     Postec has advised Plaintiffs that, in order to perform any work on the Systems, it must first receive confirmation from Oracle that Plaintiffs have valid licenses for the Systems' software.

33.     Oracle, however, has advised Plaintiffs that—despite the express licenses granted by the Micros Sales Contracts, despite Plaintiffs purchasing, at Micros' suggestion, "Red Keys" containing software license code, and despite Micros and Oracle having performed (and Plaintiffs having paid for) upgrades and repairs of the Miami, Tampa, and Fort Myers Systems' software—it is Oracle's position that Plaintiffs lack valid licenses for the Systems' software.

34.     As a consequence of Oracle failing to repair the Fort Myers System's software as A&E had paid for, and preventing Plaintiffs from obtaining those services from Postec, Plaintiffs cannot make reliable use of the Fort Myers System, resulting in ongoing losses to that business.

35.     Further, by preventing Plaintiffs from engaging third-party Postec, Oracle has also made it impossible for Plaintiffs to properly process EMV card payments with their Systems, and thereby comply with the Payment Card Industry Data Security Standard ("**PCI DSS**").  As a consequence of Plaintiffs' non-compliance with PCI DSS, Plaintiffs now automatically lose all credit card disputes, which has resulted in tens of thousands of dollars of lost revenue.

36.     Although A&E has deployed at its Miami center a third-party system that accepts EMV cards, the interface between that system and the Micros payment module consistently malfunctions, causing credit card payments to be lost in transmission and never to be found, with corresponding losses to A&E for those lost payments.

6

37.     Moreover, Oracle's confiscation of Plaintiffs' "Red Keys," and its refusal to acknowledge the validity of the Plaintiffs' Systems' software licenses has also prevented Plaintiffs from deploying the two (2) unused Systems at new locations.

38.     Unable to deploy these two (2) Systems, Plaintiffs have been required to purchase new point-of-sale systems, at significant expense, for those locations.

39.     All conditions precedent, if any, to the commencement of this action have either occurred or been performed, waived, or excused.

40.     Plaintiffs have retained the undersigned counsel to prosecute this action, for which they have agreed to pay said counsel a reasonable fee for their services.

41.     Plaintiffs state that all relevant agreements not attached hereto are in Oracle's possession and will be made part of the pleadings once obtained through discovery.

## COUNT I – BREACH OF CONTRACT

42.     Plaintiffs repeat and reallege Paragraphs 1 through 41 as if fully set forth herein.

43.     Valid contracts – the Executable Quote and Ordering Document – exist between M&A and Oracle, whereby Oracle agreed to perform certain software services, namely the deployment of the Fort Myers System and repair of its malfunctioning software.

44.     The services Oracle provided to M&A were deficient insofar as they failed to either properly deploy that System or remedy its software malfunctions.

45.     Pursuant to express warranties contained in the Executable Quote and Ordering Document, Oracle is obligated to re-perform these deficient services.

46.     Oracle has breached those Contracts by failing and refusing to re-perform the services or take other commercially reasonable steps to correct these malfunctions.

47.     As a direct and proximate result of that breach, M&A has sustained damages in the form of a malfunctioning System causing continuous business losses.

48.     Because Oracle has not only failed to correct the malfunctions, but has also prevented M&A from instead obtaining repair services from Postec, money damages from Oracle are inadequate to remedy the foregoing breach.

49.     M&A therefore respectfully requests that this Court enter either: (i) an order of specific performance requiring Oracle to take commercially reasonable steps to repair the Fort Myers System's software; or (ii) an order requiring Oracle to permit and pay for such repair services to be performed by Postec or other qualified servicer.

50.     Absent the requested order, M&A will sustain irreparable harm by not being able to reliably use or obtain repairs to its Fort Myers System.

WHEREFORE, Plaintiff, M&A GROUP, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, ORACLE AMERICA, INC., for specific performance or damages, interest, attorneys' fees, costs, and such other and further relief which this Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

51.     Plaintiffs repeat and reallege Paragraphs 1 through 41 as if fully set forth herein.

52.     Plaintiffs have attempted to engage Postec to perform work on the Systems.

53.     Oracle knows of the business relationship or expectancy between Plaintiffs and Postec.

54.     Specifically, Oracle knows that Plaintiffs are attempting to obtain from Postec services essential to the operation of the Systems.

55.     Oracle, however, has intentionally interfered with the relationship or expectancy between Plaintiffs and Postec by refusing to acknowledge the validity of the Systems' software licenses.

56.     As a proximate result of the foregoing interference by Oracle, Plaintiffs are unable to engage Postec's services, and are thus unable to use and maintain the Systems, which has in turn proximately caused Plaintiffs to sustain damages.

57.     Such damages include lost profits, which losses were reasonably foreseeable by Oracle.

WHEREFORE, Plaintiffs, A&E ADVENTURES LLC and M&A GROUP, LLC, respectfully request that this Court enter judgment in their favor and against Defendant, ORACLE AMERICA, INC., for damages, interest, attorneys' fees, costs, and such other and further relief which this Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT

58.     Plaintiffs repeat and reallege Paragraphs 1 through 41 as if fully set forth herein.

59.     Plaintiffs have valid licenses to the Systems' software by virtue of the Sales Contracts, Plaintiffs' purchase of "Red Keys" at Micros's suggestion, and Oracle's installation of upgrades to the Systems' software.

60.     Oracle, however, refuses to acknowledge the validity of the Systems' software licenses

61.     Because Postec requires such acknowledgment in order to perform service on the Systems' software, and Oracle refuses to provide such acknowledgment, Plaintiffs are unable to obtain essential support for their Systems.

62.     Plaintiffs and Oracle thus have an actual, present, adverse and antagonistic interest in whether Plaintiffs have valid licenses for the Systems' software.

63.     Because Plaintiffs are unable to obtain services from Postec that are essential to the use and maintenance of the Systems, there is a bona fide, actual, present practical need for a declaration as to the validity of the Systems' software licenses.

64.     The declaration sought deals with a present ascertained or ascertainable set of facts – the terms of the agreements and course of dealing between Plaintiffs and Oracle.

65.     The validity of the Systems' software licenses is dependent upon the law applicable to those facts.

66.     The antagonistic and adverse interests are all before the court by proper process, and the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

WHEREFORE, Plaintiffs, A&E ADVENTURES LLC and M&A GROUP, LLC, respectfully request that this Court enter judgment in their favor and against Defendant, ORACLE AMERICA, INC., declaring that Plaintiffs possess valid licenses for the Systems' software, together with attorneys' fees, costs, and such other and further relief which this Court deems just and proper.

### Class Representation Allegations

67.     Plaintiffs repeat and reallege Paragraphs 6 through 10 as if fully set forth herein.

68.     Plaintiffs are not unique in the aforementioned difficulties they have experienced with Oracle, which are instead common to all operators of the RES 3700.

69.     Recent testimonials from other RES 3700 users regarding their difficulties with Oracle are replete on the World Wide Web.  Some examples:

a.     Dara Maleki, CEO of RMS Franchise Group – "THE WORST CUSTOMER SERVICE EVER.  . . . NO TECHNICIANS A TRULY HORRIBLY RAN COMPANY I CANT BELIEVE THEY ARE THIS LARGE OF A COMPANY." (https://www.capterra.com/p/113869/Oracle-Hospitality-POS/)

b.     Dominic Fielden, President of Rocky Mountain Flatbreach – "It was good when it was Micros but since Oracle bought them its appalling. . . . I think selling to Oracle

has reduced the customer focus. . . . They are very slow to respond and about as far from being customer centric as possible.  Pity as [] I say I was quite happy with Micros and have another location coming up next year.  Having spoken to other POS companies I am now considering changing all my systems." (Id.)

c.    Frank Lyons, President of Contav, LLC – "Oracle Hospitality is an Abomination!! . . . There is absolutely nothing good to say about Oracle Hospitality.  I have no idea how they are still in business and why they haven't been sued out of existence! . . . Why hasn't anyone filed a class action suit against Oracle to recover our losses?" (Id.)

d.    Frank Staiger, President of Fraser River Lodge – "Why is Oracle-Micros still in business? . . . Terrible customer service.  Getting the runaround for 3 weeks. Nobody seems to be responsible for anything.  Running in circles. . . . Headaches with perhaps the most disorganized company ever dealt with.  Not sure how they are still in business.  We will be letting our equipment from Micros go and switch to a provider with customer service." (Id.)

e.    Rose Wong, owner of the Pearl Asian Kitchen – "No live support.  No software support.  No service.  No knowledgeable people working for the company. Fragmented help. . . .  My 3700 [M]icros is less than a year old.  Purchased maintenance contract and was ASSURED it has hardware and software support. Not true. All kinds of programming glitches that I had to live with for months with no help from support. For months I had email communications with a contract renewal sales person (the same person who sold me the first contract) about getting SOFTWARE support help/ contract. Now there is a 'fatal hard drive' error message when credit card processing company tried to install a terminal that can take chip cards since Micros still does not have the technology to do so. I tried again and [sic] again technical support said they can help but they have to submit a billable ticket. This is a software problem.  Back to same sales person for help with getting software contract.  Today got an email from her saying my same contract that has not worked and that has not expired was 'activated' and 'renewed' and it should work. I cannot believe what I was reading. This is months of communications back and forth about NO SOFTWARE HELP.  To date I paid for 2 contracts with the same number that specified 'hardware technical support' but still have a piece of equipment that cannot accept chip card reader. And that have all kinds of glitches no one seem to know why. . . . Buyer beware!" (Id.)

f.    Stephanie Koyama, the Silver Spur – "This is a terrible company.  Each time I call 'tech support' the people on the other end literally read out of the manual I have.  I place requests for calls back they promise to call and never do.  Nobody knows what they are doing.  Seems like a small jenky call center.  And each time I call they ask the same questions about my business and account so there are no notes kept on their system to help their paying customers." (Id.)

g.    Ed Griffith, Courtyard Marriott – "Horrible service!!! . . . Use another platform.  The service for their POS products is worse than horrible.  Support communicates poorly

and failed to communicate with customers. Have NEVER had a positive experience with Oracle since they assumed Micros POS support."

h.   Aaron Mackee, Senior Hospitality Analyst – "I currently have over 300 POS workstations deployed across multiple Micros platforms including Simphony 1x and Res 3700, as well as a number of hotels running Opera PMS. Dealing with Micros since the [O]racle takeover is the most painful customer service I have ever had to deal with in 20+ years in the hospitality industry. Their sales process is broken to the point where it is almost impossible to get a timely quote, and their support services are beyond useless. I would literally recommend going with ANY other provider before having to deal with Oracle Hospitality." (Id.)

i.   Justin McGranahan, AP/IT Manager of Boone Tavern – "Since the purchase of Micros by Oracle, the support standards have gone so far beyond sub par that I don't even receive phone calls back about issues I call in, the tickets just get closed when Oracle feels like it. They state that they have left messages with the site which is false as all technical calls are routed directly to me) plus my phone number and email are on every piece of documentation and yet they can't find the time to contact me before closing the case. During the installation of a new terminal, I kept records of the times that were worked, and yet the times that their staff submitted did not match the actual working times and they refused to adjust the issue to show the correct times. If you are thinking of buying this product, buy a different one simply due [sic] to the support." (Id.)

j.   Lamar Mendes, Menin Hotels – "Ever since Oracle took over Micros Hospitality we have had absolutely horrible experiences supporting such an integral part of our business. To add shame to the entire experience we have 11+ locations and pay over $125,000 a year just to have this 'top of the line service' and I have never felt more insulted by the way a support department has treated us. Excessive delays, gross incompetence, and a complete inability to receive promised call backs." (Id.)

k.   Marilynn Hayward, bookkeeper for Dimitriou's Jazz Alley – "We have made many attempts to try to make this system work, including conversations with Oracle sales team and support. They have been completely ineffective in solving any of their systems short comings. In our opinion, our installation has never been completed. We were left with the dysfunctional equipment and inaccurate reports right from the beginning. If we are unable to resolve our problems we will be forced to look for a new POS system that is able to handle our restaurant's [sic] needs. We will not recommend this POS system to anyone at this time." (Id.)

l.   Em B, General Manager of Zen Japanese Grill and Sushi Bar – "I am the general manager of a restaurant who purchased a $20,000 system through Micros approximately 2 years ago. Everything started out great...Micros was FABULOUS until Oracle bought them out. Before Oracle took over 'IF' I had any problems or just general questions, I could almost immediately get a programmer or technician from the local office on the phone and they always had the answers...but then Oracle came along. We immediately began to have system issues that stayed unresolved because I

was rarely ever contacted back by a service technician and when I was they made the problem worse, once even knocking my entire system off-line...it stayed that way for an entire weekend until a tech from the local office was sent out to fix it. He was one of the original people who installed my system and had the issue fixed within 15 minutes thankfully. He was amazing!!! It took dozens of phone calls, massive hold times, some profanity and a little crying on my end to actually get an onsite tech sent out. My Micros sales rep provided me with the email address of the head of Oracle's service dept...I've never heard back from him. The onsite tech told me that the local office had been downsized considerably and the employees that were left were forbidden by Oracle to speak directly with anyone about service issues. He also told me that the employees at the Oracle call center were never trained to use much less resolve issues with the Micros system. We have regretted the change to Micros ever since Oracle took over. Thankfully we haven't had any recent issues and I pray that we don't because it will be nothing but a headache. The owner of the restaurant I manage is in the process of opening a 2nd and 3rd restaurant...we will NOT be installing Oracle systems in either. It's a shame after spending $20,000 on a system along with paying yearly service contract fees that a person/company should be treated this way. We are both in the 'hospitality industry'...I would be mortified to know that any of my customers were treated this way!!" (Id.)

m.    Steve Miller, Member of TLC Miller LLC – "The [sic] lady at the old corporate office in Maryland said since Oracle took over the phone rings constantly eight hours a day with complaints. Looking for others to start class action." (Id.)

n.    C. Landise – "Used Micros (now 3700) for 20 years at three locations. While the customer support has never been great (or cheap) it has sunk to new lows since Oracle took over. Layers of bureaucracy to get the simplest change or programming tweaks accomplished.  Over a week to get an ordering printer replaced under contract and many hours on the phone plus a plea to the sales rep was required. The individual reps send out personal 'cheat sheets' explaining step by step how to place a support order on the incredibly confusing and cumbersome customer interface website.  (It looks like it was designed by a 1970's DOS Geek who had English as a third language.)  The last straw was the industry-wide upgrade in credit card certificate (SSL) security which happened on Dec. 28. 2016 Other Oracle competitors told their clients about its coming and had the fix in place. Oracle just let the system go down and let us hold on with customer support for hours on the holiday.  We were then told that they would need two WEEKS to address it because they had so many clients who needed the upgrade! Really hard to believe. We just upgraded all of our hardware a couple of years ago so we are stuck for now with Oracle, but never again!  I do not recommend any bar & grill to use Oracle."    (https://www.cardfellow.com/product-directory/pos-systems/micros/micros/)

o.    Binda – "I've used Micros for over 20 years with little or no problems, great customer support...until 2014!!  Not sure what has happened with this company, they closed the local office leaving us with no support.  When you call the support line you are put on hold for very long, when they finally do answer they offer very

little to no support. They charge very high fees for customer support that is practically non existent. After being a loyal Micros customers for over 20 years I am ready to look for a new system that offers support, is more advanced and easier to program." (Id.)

p.    Anne – "The Micros POS system is nearly non-functional. If we use it when our business is busy it crashes. We paid $2,000 for 1 year's support. When we call for support we're put on hold, then after remarkably long waits we're cut off by the phone system, then when someone finally picks up after several more calls they don't know enough about the system to fix it and they hang up on us. Our system is often down for days and when we put pressure on them to get it up and running they tell us we need to pay them more money. It's extortion and they should be put our to business for the fraud they're perpetrating on the small business public." (Id.)

70.    As evidenced by the foregoing testimonials, Oracle is engaged in a deliberate scheme to deprive RES 3700 system owners of essential support, and to prevent system owners from obtaining that support from third parties, in order to force those consumers to abandon the RES 3700 and purchase Oracle's subscription-based Simphony system.

71.    Plaintiffs bring this class action on behalf of themselves and others similarly situated, as members of a class they propose be defined as follows: all consumers who (a) reside in Florida, (b) owned a RES 3700 prior to the date of this Complaint, and (c) who purchased the RES 3700 within the United States.

72.    Excluded from the proposed class are Oracle; any entity in which Oracle has or had a controlling interest; any of Oracle's officers, directors, legal representatives, heirs, successors, and assigns; Plaintiffs' counsel and anyone employed by Plaintiffs' counsel; any Judge assigned to this action and his or her immediate family; an anyone who timely requests exclusion from the class.

73.    This action may be maintained on behalf of the class proposed above pursuant to Rule 1.220(b)(1) or, alternatively, Rule 1.220(b)(3).

74.    Upon information and belief, the number of proposed Class members exceeds one thousand, and individual joinder of the purchasers of these systems would be impractical.

75.     Common questions of law and fact exist as to members of the class and predominate over questions affecting only individual class members.  These common questions include:

   a.  Whether Oracle has provided adequate support for the RES 3700;

   b.  Whether Oracle has purposely or knowingly failed and refused to provide adequate support for the RES 3700;

   c.  The steps taken (or not taken) by Oracle to maintain an adequate number of personnel with adequate training to support the RES 3700s in operation;

   d.  Whether Oracle made false or misleading representations or omissions to the public regarding the availability of support for the RES 3700; and

   e.  Whether Oracle has prevented owners of the RES 3700 from obtaining support from third-parties.

76.     Plaintiffs are members of the proposed class and their claims are typical of the claims of the other members of the class.  Plaintiffs and class members all reside in Florida and purchased the RES 3700.

77.     Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

78.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of the Plaintiffs and other Class members.  The relief sought per individual member of the Class is relatively small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Oracle's conduct.  Even if the Class members themselves could afford such individual litigation, the court system could not.  Individual litigation of the legal and factual issues raised by Oracle's conduct would increase delay and expense to all parties and to the court system.  The Class action device presents far fewer

15

management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims, the Class will be easily managed by the Court and the parties.

79.     Furthermore, the prosecution of separate claims and defenses by individual members of the Class would create a risk of either: (a) inconsistent or varying adjudications concerning individual members of the Class which would establish an incompatible standard of conduct for the party opposing the Class; or (b) adjudications concerning individual members of the Class which would, as a practical matter, be dispositive of the interest of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interest.

## COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.201 ET SEQ.

80.     Plaintiffs repeat and reallege Paragraphs 1 through 41, and 67 through 79 as if fully set forth herein.

81.     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("**FDUTPA**") provides in relevant part that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.204(1).

82.     Each of the Plaintiffs is a "consumer" as defined in Fla. Stat. § 501.203.

83.     At all times material hereto, Oracle has been engaged in the business of selling products and services nationwide.

84.     Oracle is engaged in "trade or commerce" as defined in Fla. Stat. § 501.203.

85.     Oracle's above-described conduct – namely, holding itself out as providing support for the RES 3700, when it is in fact intentionally depriving consumers of that essential support,

16

while also preventing consumers from obtaining that support from third parties, for the purpose of forcing those consumers to upgrade from those systems to Oracle's subscription-based Simphony system – constitutes an unfair or deceptive act or practice under Fla. Stat. § 501.204(1).

86.     Said conduct is against public policy because it needlessly subjects consumers to purchasing newer and more expensive hardware and services in place of the RES 3700, which consumers could continue using if Oracle made adequate support available for those systems (as Micros had done), or allowed consumers to contract with third parties to obtain that support.

87.     Hundreds, perhaps thousands, of Florida consumers have been harmed by Oracle's conduct discussed above.

88.     An award of punitive damages is appropriate because Oracle's conduct has been outrageous, willful and wanton, and has showed a reckless disregard for the rights to Plaintiffs and other consumers.

WHEREFORE, Plaintiffs, A&E ADVENTURES LLC and M&A GROUP, LLC, respectfully request that this Court enter judgment in their favor and that of the proposed class, and against Defendant, ORACLE AMERICA, INC., awarding compensatory and punitive damages in amounts to be determined at trial, and reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.2105(1), together with such other and further relief which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

Dated this 15th day of February, 2018.

Respectfully submitted,

The Behar Law Firm, P.A.
*Attorneys for Plaintiffs*
17501 Biscayne Boulevard, Suite 460
Aventura, Florida 33160
Telephone: (786) 735-3300
Facsimile: (786) 735-3307
hrb@beharlegal.com
sms@beharlegal.com
np@beharlegal.com

By: *s/ Samuel M. Sheldon*
**Howard R. Behar**
Florida Bar No. 54471
**Samuel M. Sheldon**
Florida Bar No. 54088

# COMPOSITE
# EXHIBIT A



**SALES CONTRACT**

MICROS Systems, Inc.
632 S. Military Trail
Deerfield Beach, FL 33442

SALES CONTRACT NUMBER: SC LL

| DATE: 04/29/10 | SALES ACCOUNT EXECUTIVE: Lynn A White | CUSTOMER ACCOUNT #: | SALES ORDER #: | REQUESTED SHIPPING DATE: 6-Weeks |
|---|---|---|---|---|

| CUSTOMER'S LEGAL NAME: **A & E ADVENTURES LLC** | STORE LOCATION (SITE NAME): **GAMEWORKS** |
|---|---|
| ADDRESS 1112 Weston Rd. #190 | ADDRESS 1600 E 8Th Ave Space A-147 |

| CITY Weston | STATE FL | ZIP 33326 | PHONE 954-583-8000 | CITY Tampa | STATE FL | ZIP 33605 | PHONE TBD |
|---|---|---|---|---|---|---|---|

| BILL TO, IF DIFFERENT THAN ABOVE: | SHIP TO (DELIVER TO), IF DIFFERENT THAN ABOVE: |
|---|---|
| IS THIS A LEASING COMPANY? ___ YES _X_ NO | |
| ADDRESS | ADDRESS |

| CITY | STATE | ZIP | PHONE | CITY | STATE | ZIP | PHONE |
|---|---|---|---|---|---|---|---|

| QTY. | PART NUMBER | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| | | SEE ATTACHED ADDENDUM PAGES | | |
| | | Hardware/Software/Supplies | | $ 725.00 |
| | | MSA/Help Desk/SEL Services | | $ - |
| | | Programming and Training Services | | $ - |

**PAYMENT TERMS:**

PREPAY

WILL A LEASING COMPANY BE USED? ___ YES _X_ NO

NEW CUSTOMER? _X_ YES ___ NO

IS P/O REQUIRED FOR PAYMENT?

IF YES, INSERT PURCHASE ORDER NUMBER: _____

IF NO, CUSTOMER MUST INITIAL HERE: _____

IS CUSTOMER SITE WITHIN DISTRICT SERVICING TERRITORY?

___ YES _X_ NO

WHICH DISTRICT? _MICROS of Central FL_

| TAX | TO BE INVOICED |
|---|---|
| TRAVEL EXPENSES | TO BE INVOICED |
| SHIPPING | TO BE INVOICED |
| TOTAL PURCHASE* | 725.00 |
| *EXCLUDING TAX & SHIPPING TO BE INVOICED | |
| NONREFUNDABLE DEPOSIT | $ (725.00) |
| CHECK NUMBER: _____ | |
| BALANCE DUE | |

CUSTOMER NAME:   A & E ADVENTURES LLC

___ INDIVIDUAL ___ CORPORATION ___ PARTNERSHIP _✓_ LLC

DOING BUSINESS AS   GAMEWORKS

BY: _____   DATE 4-30-10

SIGNATURE

_Michael Abraham S_   _Manager Member_
PRINTED NAME   TITLE

**CUSTOMER HAS RECEIVED AND AGREED TO THE TERMS AND CONDITIONS ON ALL PAGES OF THIS CONTRACT, INCLUDING THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO**

| FOR USE BY CREDIT DEPARTMENT ONLY | REVIEWED BY: | FOR MICROS USE ONLY |
|---|---|---|
| | SALES MANAGER | DATE |
| | CUSTOMER SERVICE MANAGER | DATE |
| | ACCEPTED BY: | CREDIT DEPARTMENT ONLY |
| | CREDIT MANAGER | DATE |

WB v11.01 /0/00/00

358.87000.00.120.00

# micros

## Hardware/Software/Supplies Addendum

Ship To: GAMEWORKS     Bill To: A & E ADVENTURES LLC     Sales Contract #:     LL

| Date | Sales Rep | Sales Order No. | Customer Order No. | District Office |
|------|-----------|-----------------|--------------------|-----------------|
| 04/29/10 | Lynn A White | | | Deerfield - South Florida |

| Qty | Part # | Description | | | |
|-----|--------|-------------|--|--|--|
| 1 | 003740-430 | *3700 CA/EDC Univl Driver w/1 Year Support Contract | | | |
| | | Total Hardware/Software/Supplies | | | $ 725.00 |

WS v11.01 /T .00 /D .00 /O .00 /K 0 00% /TL 54.69%
Hdw/Sftw Addendum? Y   Svcs? N




Customer Initials

**STANDARD TERMS AND CONDITIONS OF SALES CONTRACT (ONE YEAR WARRANTY)**

THIS SALES CONTRACT IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. This Sales Contract shall be effective only when accepted by a duly authorized officer of MICROS. Any financing documents executed in connection with this Sales Contract, including, but not limited to, any promissory note, security agreement, or financing statement, shall be deemed a part of this Sales Contract.

2. MICROS retains title, ownership, and right of possession of the Products (defined as all of the products listed on the first page of this Sales Contract and any addenda including, without limitation, hardware, software, and services) purchased or licensed hereunder until shipment of the Products; upon shipment, MICROS continues to retain title to the software Products, and extends to Customer a license for the software Products in accordance with the terms of paragraph 15 hereof. Any balance outstanding for more than 30 days from the date of the invoice shall bear interest of 1 1/2% per month or the maximum rate allowed by law if less. If Customer does not pay the sums due under this Sales Contract as and when such sums are due, then MICROS shall have and may exercise all rights and remedies available to it at law or in equity, including, without limitation, the immediate right to enter any premises where the Products are located and to take possession of the Products with or without notice or demand and with or without legal proceedings; in such event, Customer will pay upon demand a reasonable Product rental fee and will reimburse MICROS for all expenses that MICROS reasonably has incurred including, without limitation, disassembly, shipping and installation expenses, attorneys' fees, and court costs. The parties agree that this Sales Contract and the license terms hereunder constitute an executory contract in accordance with Section 365 of the US Bankruptcy Code; and therefore, in the event Customer is in default and files for bankruptcy, this Sales Contract and the licensing terms of the software Products shall terminate unless Customer cures all defaults.

The foregoing rights and remedies are not and shall not be deemed to be MICROS's exclusive remedies. Customer acknowledges that some of the fees paid to MICROS under this Sales Contract may be dispersed to other parties, including, without limitation, third party service providers, third party software and interface providers, franchisors and management companies. Additionally, Customer recognizes that MICROS may receive fees or payments from third parties in connection with software, support, development or credit card transactions.

3. MICROS will endeavor in good faith to deliver Products purchased or licensed by Customer pursuant to this Sales Contract within the time specified in MICROS's order acceptance. MICROS shall not be liable for any delay in delivery or failure to deliver. All claims for shortage or damage before delivery shall be deemed waived unless Customer delivers written notice of a claim to MICROS within ten days after delivery of the Products to Customer. Upon shipment, Customer bears all risk of loss or damage to the Products from any cause whatsoever.

4. The down payment amount listed on the first page of this Sales Contract is not refundable; it reflects reimbursement to MICROS of the costs of systems consultation services associated with site evaluation, system presentation and/or programming documentation of the Products, and order processing.

5. The prices listed in this Sales Contract include initial programming and training of personnel in the use and operation of the Products only when expressly indicated. If MICROS is providing training, training will be provided only to Customer's employees, and MICROS's sole obligation for training will be to supply a qualified instructor for the designated number of training hours. MICROS does not guarantee that, after such training, the trainees will be able to use or operate the Products properly. Upon Customer request, MICROS will provide additional training time beyond the amounts stated in this Sales Contract at MICROS's then-prevailing rates for training. Customer agrees to pay all travel, accommodations and other reasonable expenses incurred by MICROS' employees, subcontractors or agents in connection with providing programming, installation, and training hereunder. MICROS shall endeavor to obtain reasonable available airfares and will not travel first class. Travel and related expenses will be invoiced when incurred by MICROS and shall be paid by Customer within 30 days of the date of the invoice.

6. The prices listed in this Sales Contract do not include installation of the Products, except as otherwise designated herein. Customer is solely responsible for installation of the requisite AC power lines. MICROS does not provide cabling service, and shall not be responsible for the inspection of such electrical installation. Customer acknowledges receipt of documentation concerning the requirements for dedicated, isolated, and insulated AC power lines for all MICROS Products. Customer acknowledges and agrees that MICROS's warranty is conditioned upon Customer's providing environmental and operating conditions conforming to MICROS's specifications.

7. MICROS warrants that, upon delivery, the hardware Products shall be in good working order. For a period of one (1) year after delivery, should any part of the hardware Products prove to be defective in material or workmanship, MICROS will repair or replace such part at no charge to Customer, including parts and labor.

Warranty service is available seven (7) days per week from 9:00 AM to 10:00 PM, including holidays. MICROS (or its authorized service representative) will bill Customer at the then prevailing rate for any labor charges (including travel) for warranty service performed at Customer's request outside of the foregoing time periods.

MICROS will provide Customer with hardware warranty service on the terms and conditions of the web-posted Maintenance Terms and Conditions on the MICROS website in effect on the date that Customer signs this Sales Contract. Customer may view the Maintenance Terms and Conditions on the MICROS website at <http://www.MICROS.com/ServicesAndSupport/MaintenanceTermsAndConditions>. MICROS will provide a copy of the applicable document upon request. THIS IS THE ONLY WARRANTY MADE AS TO THE HARDWARE PRODUCTS AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED, OR STATUTORY, INCLUDING THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, ACCURACY, AND USE. MICROS'S SOLE OBLIGATION UNDER THIS WARRANTY IS LIMITED TO THE REPAIR OR REPLACEMENT OF THE HARDWARE PRODUCTS OR PARTS THEREOF.

Warranty coverage will not be extended for repairs made necessary by damages due to fire, water, storm, burglary, power line fluctuations, spillage, accident, negligence, or abuse. The warranty specifically excludes damages to printer heads or printer motors caused by paper jams or insertion of foreign objects between the printer head and the print surface. Only upon Customer request and only after Customer approves the estimated costs to repair will MICROS repair or replace equipment damaged by one or more of the foregoing causes or events.

8. IN NO EVENT SHALL MICROS, ITS SUBSIDIARIES AND AFFILIATES, OR ITS OR THEIR EMPLOYEES BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES, INCLUDING LOST PROFITS, BUSINESS INTERRUPTION, OR OTHER INCIDENTAL, PUNITIVE, OR ECONOMIC DAMAGES (INCLUDING THOSE ASSOCIATED WITH IMPROPER, UNDER-CALCULATED OR UNDER-ACCRUED TAXES OR GOVERNMENT LEVIES) WHETHER ARISING FROM CUSTOMER'S USE (OR INABILITY TO USE) OF THE SOFTWARE, SUPPORT PROVIDED HEREUNDER, OR OTHERWISE, EVEN IF MICROS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. IN NO EVENT SHALL MICROS BE LIABLE FOR ANY DAMAGES IN EXCESS OF THE HARDWARE FEES PAID HEREUNDER. MICROS SHALL NOT BE RESPONSIBLE FOR AND DISCLAIMS ANY LIABILITY ASSOCIATED WITH FAILURE TO PROCESS CREDIT CARD TRANSACTIONS.

MICROS SHALL NOT, BY REASON OF THE DISCONTINUATION OR MODIFICATION OF THE PRODUCTS OR ANY MICROS PRODUCTS OR THE TERMINATION OR NON-RENEWAL OF THIS AGREEMENT, BE LIABLE TO CUSTOMER FOR COMPENSATION, REIMBURSEMENT OR DAMAGES ON ACCOUNT OF THE LOSS OF PROSPECTIVE PROFITS, OR ON ACCOUNT OF EXPENDITURES, INVESTMENTS OR COMMITMENTS MADE IN CONNECTION WITH THE ESTABLISHMENT, DEVELOPMENT OR MAINTENANCE OF CUSTOMER'S BUSINESS. EXCEPT FOR EXPRESS WARRANTIES STATED IN THIS AGREEMENT, IF ANY, THE PRODUCTS (INCLUDING HARDWARE AND SOFTWARE) AND ALL SERVICES PROVIDED HEREUNDER ARE PROVIDED WITH ALL FAULTS AND THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY, AND EFFORT IS WITH THE CUSTOMER. As indicated in the hardware addendum, certain hardware items are subject only to supplier or manufacturer warranties, which MICROS will pass through to Customer when and to the extent permitted to do so by the manufacturer or supplier.

9. It is Customer's responsibility to have and maintain in place virus protection software and security for all of its systems and data, which such security includes firewalls, passwords, physical security and access control policies. If Customer's systems have persistent connections to the Internet, or transmit credit card or gift card transactions over the Internet, or use MICROS or 3rd party SSL to transmit credit card or gift card transactions, or otherwise have persistent connections to any network where there is potential for unauthorized access, Customer acknowledges that the security and protection of the network and the data and applications on that network, including protections against unauthorized access, is solely and entirely Customer's responsibility. A properly configured firewall is required for each site using a persistent connection to the public Internet or any private network where there is a potential for unauthorized access to the MICROS network. Customer acknowledges that, to be effective, virus protection software, system passwords, and other security software require periodic and routine updates, which Customer must obtain from its supplier or the manufacturer, as appropriate.

MICROS DISCLAIMS ANY WARRANTY, EXPRESS OR IMPLIED, THAT, AFTER THE INITIAL INSTALLATION BY MICROS OF ANY MICROS PROPRIETARY SOFTWARE, THE SOFTWARE OR CUSTOMER'S DATA WILL REMAIN VIRUS-FREE. SUPPORT OR SERVICES HEREUNDER NECESSITATED BY COMPUTER VIRUSES, OR BY ANY FAILURE OR BREACH OF CUSTOMER'S SECURITY FOR ITS SYSTEMS OR DATA, INCLUDING, WITHOUT LIMITATION, DAMAGE CAUSED BY PERSONS LACKING AUTHORIZED ACCESS, ARE NOT COVERED UNDER THIS AGREEMENT, AND WILL BE SUPPLIED ONLY UPON CUSTOMER REQUEST AND ON A REASONABLE EFFORTS BASIS, ON A TIME-AND-MATERIALS BASIS AT STANDARD MICROS RATES. CUSTOMER WAIVES ANY CLAIMS HEREUNDER AGAINST MICROS TO THE EXTENT ARISING FROM CUSTOMER'S FAILURE TO HAVE OR MAINTAIN CURRENT VIRUS PROTECTION, OR TO THE EXTENT ARISING AS A RESULT OF A FAILURE OR BREACH OF CUSTOMER'S SECURITY FOR ITS SYSTEMS OR DATA, OR AS A RESULT OF ANY UNAUTHORIZED ACCESS TO CUSTOMER'S SYSTEMS.

IF REQUESTED BY CUSTOMER, MICROS SHALL PROVIDE, ON A REASONABLE EFFORTS AND ON A TIME-AND-MATERIALS BASIS, SUPPORT OR SERVICES TO ADDRESS DAMAGE CAUSED BY, BUT NOT LIMITED TO, ANY OF THE FOLLOWING: CUSTOMER'S FAILURE TO HAVE CURRENT VIRUS PROTECTION; CUSTOMER'S FAILURE TO MAINTAIN VIRUS PROTECTION; DAMAGE ARISING AS A RESULT OF A FAILURE OF CUSTOMER'S SECURITY FOR ITS SYSTEMS OR DATA; DAMAGE ARISING AS A RESULT OF A BREACH OF CUSTOMER'S SECURITY FOR ITS SYSTEMS OR DATA; OR DAMAGE AS A RESULT OF ANY UNAUTHORIZED ACCESS TO CUSTOMER'S SYSTEMS. SUCH SUPPORT AND SERVICES SHALL BE BILLED AT THE PREVAILING STANDARD MICROS RATES.

10. This Sales Contract constitutes the entire agreement between Customer and MICROS with respect to its subject matter. Only a writing signed by both Customer and MICROS is effective to amend this Sales Contract. Customer expressly represents to MICROS that no officer, employee, representative, or agent of MICROS has made or entered into any oral agreement, promise, or understanding which conflicts with any of the terms set forth in this Sales Contract. **The terms of this Sales Contract shall supersede any inconsistency or conflict between this Sales Contract and the terms and conditions of any purchase order, receipt, or other transaction-related document that Customer may issue in connection with this Sales Contract. MICROS rejects all terms of Customer's purchase order, receipt, or other transaction-related document that would be in addition to the terms hereof, and none of such additional terms are binding on MICROS.**

11. This Sales Contract shall be governed by and construed according to the laws of the state of Maryland. The parties mutually consent to exclusive jurisdiction and venue in the state and federal courts sitting in the State of Maryland for all matters arising under or relating to this Sales Contract, whether based on contract, tort, or otherwise. MICROS AND CUSTOMER EACH UNCONDITIONALLY AND IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL WITH RESPECT TO ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE SUBJECT MATTER HEREOF, AND/OR THE RELATIONSHIP BETWEEN THE PARTIES, WHICH WAIVER IS INTENDED TO INCLUDE, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS. The parties agree that, to the maximum extent permitted by law, the Maryland Uniform Computer Information Transactions Act does not apply to the transactions and other matters contained in this Sales Contract.

12. Customer may not, and is expressly prohibited, from assigning or transferring this Agreement or its respective rights and obligations hereunder. Additionally, in the event of any Customer merger, consolidation, stock purchase, stock sale or reorganization (the "Event"), the rights and benefits accorded hereunder shall not be assignable and shall not inure to any entities and locations not affiliated with the Customer prior to the Event. Nothing hereunder shall prevent or restrict Customer from changing its trading commercial name or its affiliation with a management company, provided Customer gives MICROS prompt written notice of any such change. Customer acknowledges and agrees that MICROS will and is permitted to subcontract certain of its obligations under this Sales Contract to MICROS's authorized service representatives. Customer shall not engage any third parties, other than MICROS, to provide any implementation services hereunder. This Sales Contract is not otherwise assignable by either party without the written consent of the other party. If a court of competent jurisdiction holds any provision of this Sales Contract to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect. No waiver of any breach of any provision of this Sales Contract shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any other provisions hereof. No waiver shall be effective unless made in writing and signed by the waiving party.

13. MICROS may terminate this Sales Contract, or delay shipment hereunder, for Customer's breach of this Sales Contract, if the breach is not cured within 30 days of notice. Assent of Customer to the terms and conditions of sale set forth herein shall be conclusively presumed from failure of Customer reasonably to object in writing or from acceptance by Customer of all or any part of the material ordered.

14. Any MICROS Products returned due to changes in configuration will be subject to a restocking fee of 20% of the cost of the Products. If MICROS determines that the Products have been used, MICROS will assess a charge of up to 50% of the cost of Products. Orders placed by the Customer shall be subject to emergency processing charges as follows: emergency breakdown fees for software Products and spare parts for hardware Products are $100 for every 3 item lines requested by Customer to be shipped within 24 hours and $50 for every 3 item lines requested by Customer to be shipped within 48 hours. If Customer requests (and MICROS approves) that hardware Products be shipped within 5 business days, an express fee in the amount of 5% of the order's value (maximum of $500) will be added to the invoice.

15. Upon payment in full of all sums due under this Sales Contract, MICROS grants to Customer a nonexclusive nontransferable license to use the software identified on the first page of this Sales Contract only on the hardware sold hereunder, subject to all of the terms hereof. Customer's use of the software (whether or not on any hardware sold hereunder) constitutes agreement to these license terms. The software is licensed, not sold, and MICROS reserves all rights not granted hereunder. Customer may not reverse engineer, decompile, modify, or disassemble the software. The performance of the software is conditioned upon Customer providing environmental and operating conditions (including network, third-party software, hardware, and configuration) in accordance with MICROS specifications. Customer waives any warranty claims with respect to the software if the environmental and operating conditions do not meet MICROS's specifications.

MICROS will not provide software support and upgrades to Customer unless Customer purchases help desk support service or case packs and a software enhancement license ("SEL"). If purchased hereunder, MICROS will provide Customer help desk support service, case packs, SEL and/or credit card support services ("CAEDC") on the terms and conditions of the most current version of the web-posted Maintenance Terms and Conditions on the MICROS website in effect on the date that Customer signs this Sales Contract. Customer may view the Maintenance Terms and Conditions on the MICROS website at <http://www.MICROS.com/ServicesAndSupport/MaintenanceTermsAndConditions>. In the event that Customer requests that MICROS assist Customer in connection with the internal control evaluation, audits or reporting (including without limitation those in connection with Sarbanes-Oxley compliance), MICROS shall charge Customer at its standard daily rates.

Customer Initials

INITIAL HERE

T&C 03/24/08; WS v9.05



MICROS Systems, Inc.
632 S. Military Trail
Deerfield Beach, FL 33442

**SALES CONTRACT**

SALES CONTRACT NUMBER: SC  LL

| DATE: 04/29/10 | SALES ACCOUNT EXECUTIVE: Lynn A White | CUSTOMER ACCOUNT #: | SALES ORDER #: | REQUESTED SHIPPING DATE: 6-Weeks |
|---|---|---|---|---|

| CUSTOMER'S LEGAL NAME: **A & E ADVENTURES LLC** | STORE LOCATION (SITE NAME): **GAMEWORKS** |
|---|---|
| ADDRESS 1112 Weston Rd. #190 | ADDRESS 5701 Sunset Drive, #330 |

| CITY Weston | STATE FL | ZIP 33326 | PHONE 954-583-8000 | CITY Miami | STATE FL | ZIP 33143 | PHONE 305-667-4263 |
|---|---|---|---|---|---|---|---|

| BILL TO, IF DIFFERENT THAN ABOVE: | SHIP TO (DELIVER TO), IF DIFFERENT THAN ABOVE: |
|---|---|
| IS THIS A LEASING COMPANY? ___ YES  _X_ NO | |
| ADDRESS | ADDRESS |
| CITY    STATE    ZIP    PHONE | CITY    STATE    ZIP    PHONE |

| QTY | PART NUMBER | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| | | SEE ATTACHED ADDENDUM PAGES | | |
| | | Hardware/Software/Supplies | | $        725.00 |
| | | MSA/Help Desk/SEL Services | | $           - |
| | | Programming and Training Services | | $           - |

| PAYMENT TERMS: | |
|---|---|
| | TAX | TO BE INVOICED |
| PREPAY | TRAVEL EXPENSES | TO BE INVOICED |
| | SHIPPING | TO BE INVOICED |
| WILL A LEASING COMPANY BE USED? ___ YES _X_ NO | TOTAL PURCHASE* | 725.00 |
| NEW CUSTOMER? _X_ YES ___ NO | *EXCLUDING TAX & SHIPPING TO BE INVOICED | |
| IS P/O REQUIRED FOR PAYMENT? | NONREFUNDABLE DEPOSIT | $        (725.00) |
| | CHECK NUMBER: _____ | |
| IF YES, INSERT PURCHASE ORDER NUMBER: _____ | BALANCE DUE | |

IF NO, CUSTOMER MUST INITIAL HERE:  _O_

CUSTOMER NAME:    A & E ADVENTURES LLC

___ INDIVIDUAL ___ CORPORATION ___ PARTNERSHIP _✓_ LLC

DOING BUSINESS AS    GAMEWORKS

IS CUSTOMER SITE WITHIN DISTRICT SERVICING TERRITORY?

_X_ YES ___ NO

WHICH DISTRICT? ____SFL____

BY: _____  DATE 4/30/10

SIGNATURE

Michael Abecassis    Managing Member
PRINTED NAME            TITLE

CUSTOMER HAS RECEIVED AND AGREED TO THE TERMS AND CONDITIONS ON ALL PAGES OF THIS CONTRACT, INCLUDING THE STANDARD TERMS AND CONDITIONS ATTACHED HERETO

| FOR USE BY CREDIT DEPARTMENT ONLY | FOR MICROS USE ONLY |
|---|---|
| | REVIEWED BY: |
| | SALES MANAGER                        DATE |
| | CUSTOMER SERVICE MANAGER            DATE |
| | ACCEPTED BY:          CREDIT DEPARTMENT ONLY |
| | CREDIT MANAGER                      DATE |

WB v11.01 /10/00/00

247.40600.00.56.00

# micros

## Hardware/Software/Supplies Addendum

Ship To: GAMEWORKS     Bill To: A & E ADVENTURES LLC     Sales Contract #:    LL

| Date | Sales Rep | Sales Order No. | Customer Order No. | District Office |
|------|-----------|-----------------|--------------------|-----------------|
| 04/29/10 | Lynn A White | | | Deerfield - South Florida |

| Qty | Part # | Description | | | |
|-----|--------|-------------|--|--|--|
| 1 | 003740-430 | *3760 CA/EDC Univl Driver w/1 Year Support Contract | | | |
| | | Total Hardware/Software/Supplies | | $ | 725.00 |

WB v11.01 /T .00 /D .00 /O .00 /K 0.00% /TL 54.69%
Hdw/Sfw Addendum? Y   Svcs? N

 

Customer Initials

# EXHIBIT B

Page 1 of 1

# ORACLE

## INVOICE

Federal Tax ID: 94-2805249

| | |
|---|---|
| INVOICE NUMBER | 6473846 |
| INVOICE DATE | 13-Oct-2015 |
| YOUR P.O. NUMBER | POEF_300470139 |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 12-Nov-2015 |

BILL TO :
M&A Group LLC
Mr. Mike Abecassis
5000 Oakes Rd
Unit H
Davie, FL 33314
United States

**PAYMENT INSTRUCTIONS:**

REFERENCE    6473846        ON YOUR REMITTANCE

MAIL CHECKS TO:    Oracle America, Inc.
                   P.O. Box 203448
                   Dallas 75320-3448

WIRE TRANSFERS TO:    WELLS FARGO BANK
                      ABA   121000248
                      ACCT  4522-020841

SHIP TO :
M&A Group LLC
Mr. Mike Abecassis
10037 Gulf Center Dr
Fort Myers, FL  33913
United States



FOR BILLING QUESTIONS, CALL COLLECTIONS CENTER (888) 803-7414

| ORACLE SALESPERSON | ORACLE ORDER NUMBER | CUSTOMER CONTACT | END USER |
|---|---|---|---|
| Moreno, Ana Corina (Corina) | 300470139 | Mike Abecassis | M&A Group LLC |

| ITEM NO. | DESCRIPTION | QTY/ NO. OF USERS | TAX | EXTENDED AMOUNT |
|---|---|---|---|---|
| 1 | B80285(1.F&B Project Mgmt p/Hr) - 1 hrs billed at 121.55USD/hr | 1 | N | 121.55 |
| 2 | B80282(2 F&B POS Services per Hr) - 7 hrs billed at 105.96USD/hr | 1 | N | 741.72 |

SPECIAL INSTRUCTIONS:

| SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|
| 863.27 | 0.00 | 863.27 |
| **Less Payments** | | 0.00 |
| **Credits/Adjustments** | | 0.00 |
| **Outstanding Balance as of 14-Oct-2015** | | 863.27 |

# ORACLE

**Oracle Services**
Invoice Expenditure Details

| Project Number | 00047013G | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Project Name | HGBU33714899B M&A Group LLC | | | | | | | |
| PO Number/Agreement | POEP-00047013G | | | | | | | |
| Labor/Expense Number | 64703546 | | | | | | | |

| Expenditure | Item Date | Task Number | Task Name | Type | Qty | UoM | Billed Amount (USD) | Detailed Comments |
|---|---|---|---|---|---|---|---|---|
| Labor Automatic | | | | | | | | |
| | 09-Oct-2015 | 1-R&D Project Mgmt p/Hr | BB0285 | | 0 | 0.00 | 0.00 | 121.56 | BB0285B(1-R&D Project Mgmt p/Hr) 1 hrs billed at 121.56USD/hr |
| | 09-Oct-2015 | 2-R&D PO& Services per Hr | BB0982 | | 0 | 0.00 | 0.00 | 741.72 | BB0982(2-R&D PO& Services per Hr) 7 hrs billed at 105.96USD/hr |
| Total Labor Automatic | | | | | 0.00 | 0.00 | 863.27 | |
| Grand Total | | | | | 0.00 | 0.00 | 863.27 | |
| Grand Total: | | | | | 0.00 | 0.00 | 863.27 | |

ORACLE AMERICA, INC.
1001 Sunset Blvd.
Rocklin, CA 95765
United States



Mike Abecassis
M&A Group LLC
5000 Oakes Rd Ste H
Davie FL 33314-2119
United States

# EXHIBIT C



| EXECUTABLE QUOTE |
|---|

Oracle America, Inc.
500 Oracle Parkway
Redwood Shores, CA
94065

| **Your Name** | M&A Group LLC c/o Gametime Fort Myers | **Your Contact** | Mike Abecassis |
|---|---|---|---|
| **Your Location** | 10037 Gulf Center Dr Fort Myers FL 33913 | **Phone Number** **Email Address** | 4079380300 ma@aa.bz |

| Other Fees | Quantity | |
|---|---|---|
| Oracle Hospitality Food and Beverage Point of Sale Implementation Services - per Hour | 1 | 101.06 |
| Oracle Hospitality Food and Beverage Project Management - per Hour | 1 | 115.94 |
| | Other Fees | 217.00 |

| Fee Description | | Net Fee |
|---|---|---|
| Other Fees | | 217.00 |
| Total Fees | | 217.00 |

## A. Agreement and Modifications to the Agreement

### 1. Agreement

a. This order incorporates by reference the terms of the Oracle Master Agreement US-OMA-QT5627696 and all amendments and addenda thereto (the "Master Agreement"). The defined terms in the Master Agreement shall have the same meaning in this order unless otherwise specified herein.

## B. General Terms

### 1. Summary of Fees

a. Listed above is a summary of net fees due under this order. All fees on this order are in US Dollars and are exclusive of any applicable shipping charges or applicable taxes.

b. You have ordered Hardware and/or Programs and 0 months of technical support services.

c. For Consulting Services, fees for fixed price services and/or estimates for Time and Materials services will also be listed in the summary above.

### 2. Commencement Date

a. For Consulting Services, the Commencement Date shall be the effective date of this order.

### 3. Pricing Invoicing and Payment Obligation

a. Fees for Consulting Services may be invoiced i) in advance of service performance for fixed fee services; or ii) monthly as services are performed for Time and Materials services which are identified above as "per Hour". In addition to the service fees listed in this order, for Consulting Services, Oracle will invoice You for travel and out-of-pocket expenses, if any, related to the performance of services. Any amounts specified in this order for expenses are estimates and are intended only to be for Your budgeting purposes. Such expenses will be invoiced as incurred.

**4. Fees**

Once placed, Your order shall be non-cancelable and the sums paid nonrefundable, except as provided in the Master Agreement.

**5. Order of Precedence**

In the event of inconsistencies between the terms contained in this order and the Master Agreement, this order shall take precedence. This order will control over the terms contained in any purchase order.

**6. Offer Validity**

This order is valid through 29-FEB-2016, and shall become binding upon execution by You and acceptance by Oracle.

**7. Customer Reference**

Oracle may refer to You as an Oracle customer of the ordered Products and Service Offerings in sales presentations, marketing vehicles and activities.

**C. Terms Specific to Consulting Services**

**1. Rights Granted / Restrictions**

a. Upon payment for Services, You have the non-exclusive, non-assignable, royalty free, perpetual, limited right to use for Your internal business operations anything developed by Oracle and delivered to You under this order ("deliverables"); however, certain deliverables may be subject to additional license terms provided in this order.
b. You may allow Your agents and contractors (including, without limitation, outsourcers) to use deliverables for Your internal business operations and You are responsible for their compliance with the Agreement and this order in such use.
c. Services provided may be related to Your license to use Products owned or distributed by Oracle which You acquire under a separate order. The agreement referenced in that order shall govern Your use of such Products.

**2. Service Descriptions**

Consulting Services You have ordered under this order are described in and governed by the Consulting Services service descriptions found in the Consulting Services section at www.oracle.com/contracts.

**3. Time and Materials ("T&M") Services**

a. Consulting Services identified above as "Per Hour" are provided on a time and materials ("T&M") basis; that is, You shall pay Oracle at for all of the time spent performing such services at the rate specified above, plus materials, taxes and expenses. All fees and expenses will be invoiced monthly.
b. For Consulting Services identified above as "Per Hour", the fees specified in the table above are estimates for labor and are intended only to be for Your budgeting and Oracle's resource scheduling purposes; these estimates do not include taxes. Oracle will invoice You for actual time spent performing the services, plus materials, taxes and expenses, such invoice may exceed the total estimated amounts documented above. Once fees for these services reach the estimate, Oracle will cooperate with You to provide continuing services on a T&M basis.

**4. Assumptions and Obligations**

a. You will identify a designated contact to Oracle, with the appropriate level of authority, to set priorities, coordinate activities and resolve conflicts between Your teams to support the performance of the Consulting Services.
b. Upon Oracle's reasonable request, You agree to provide Oracle access to relevant resources with knowledge to support the performance of the Consulting Services.
c. You will provide for all Oracle resources performing Consulting Services at Your location a safe and healthful workspace (e.g., a workspace that is free from recognized hazards that are causing, or likely to cause, death or serious physical harm, a workspace that has proper ventilation, sound levels acceptable for resources performing services in the workspace, and ergonomically correct work stations, etc.).
d. Any request for changes in Consulting Services must be in writing; this includes changes in project plans, scope, specifications, schedule, designs, requirements, service deliverables, software environment, hardware environment or any other aspect of Your order. Oracle shall not be obligated to perform tasks related to changes in time, scope, cost, or contractual obligations until You and Oracle agree in writing to the proposed change in an amendment to Your order.
e. As required by U.S. Department of Labor regulations (20 CFR 655.734), You will allow Oracle to post a notice regarding Oracle H-1B employee(s) at the work site prior to the employee's arrival on site.

**5. Warranties, Disclaimers and Exclusive Remedies**

a. Oracle warrants that Services will be provided in a professional manner consistent with industry standards. You must notify Oracle of any warranty deficiencies within 90 days from performance of the deficient Services.
b. FOR ANY BREACH OF THE WARRANTY, YOUR EXCLUSIVE REMEDY AND ORACLE'S ENTIRE LIABILITY SHALL BE THE RE-PERFORMANCE OF THE DEFICIENT SERVICES, OR, IF ORACLE CANNOT SUBSTANTIALLY CORRECT THE DEFICIENCY IN A

COMMERCIALLY REASONABLE MANNER, YOU MAY END THE DEFICIENT SERVICES AND RECOVER THE FEES YOU PAID TO ORACLE FOR THE DEFICIENT SERVICES.

c. TO THE EXTENT NOT PROHIBITED BY LAW, THIS WARRANTY IS EXCLUSIVE AND THERE ARE NO OTHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

| | |
|---|---|
| **M&A Group LLC c/o Gametime Fort Myers** | |
| Authorized Signature | *Gregg Wiston* |
| Name | Gregg Wiston |
| Title | CFO |
| Signature Date | Dec 9, 2015 |

5794086 - 1

# EXHIBIT D

Page 1 of 1

# ORACLE

## INVOICE

Federal Tax ID: 94-2805249

| | |
|---|---|
| INVOICE NUMBER | 6487846 |
| INVOICE DATE | 09-Feb-2016 |
| YOUR P.O. NUMBER | POEF 300469592 |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 10-Mar-2016 |

**BILL TO :**
M&A Group LLC
Mr. Mike Abecassis
5000 Oakes Rd
Unit H
Davie, FL 33314
United States

**PAYMENT INSTRUCTIONS:**

| REFERENCE | 6487846 | ON YOUR REMITTANCE |
|---|---|---|
| MAIL CHECKS TO: | | Oracle America, Inc.<br>P.O. Box 203448<br>Dallas TX 75320-3448 |
| WIRE TRANSFERS TO: | | WELLS FARGO BANK<br>ABA   121000248<br>ACCT 4522-020841 |

**SHIP TO :**
M&A Group LLC
Mr. Mike Abecassis
5000 Oakes Rd
Unit H
Davie, FL 33314
United States

FOR BILLING QUESTIONS, CALL: (888) 803-7414 OR EMAIL: COLLECTIONS_US@ORACLE.COM

| ORACLE SALESPERSON | ORACLE ORDER NUMBER | CUSTOMER CONTACT | END USER |
|---|---|---|---|
| Moreno, Ana Corina (Corina) | 300469592 | Mike Abecassis | M&A Group LLC |

| ITEM NO. | DESCRIPTION | QTY / NO. OF USERS | TAX | EXTENDED AMOUNT |
|---|---|---|---|---|
| 1 | B80285(1.F&B Project Mgmt p/Hr) - 2 hrs billed at 121.55USD/hr | 1 | N | 243.10 |
| 2 | B80282(2.F&B POS Services per Hr) - 14 hrs billed at 105.95USD/hr | 1 | N | 1,483.30 |
| 3 | US:PARKING | 1 | N | 11.60 |
| 4 | US:Mileage/Km | 1 | N | 216.20 |

| SPECIAL INSTRUCTIONS: | SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|---|
| | 1,954.20 | 0.00 | 1,954.20 |
| | Less Payments | | 0.00 |
| | Credits/Adjustments | | 0.00 |
| | Outstanding Balance as of 21-Oct-2016 | | 1,954.20 |

# ORACLE

**Oracle Services**
Invoice Expenditure Details

Report Date: 2/9/2016
Page 1 of 1

0004896282
HGBU 891 48H9 M&A Group LLC.
POST 000405482
6487846

| Name | Date | Item Description | Item Number | Rate | Qty | Tax | Amount | Currency | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 07-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:Mileage:K m | 54.05 | 0.00 | 54.05 | USD | Install - Gametime Ft Myers |
| Nadelman, David C (Dave) | 07-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:Mileage:K m | 54.05 | 0.00 | 54.05 | USD | Install - Gametime Ft Myers |
| Nadelman, David C (Dave) | 08-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:Mileage:K m | 54.05 | 0.00 | 54.05 | USD | Install - Gametime Ft Myers |
| Nadelman, David C (Dave) | 08-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:Mileage:K m | 54.05 | 0.00 | 54.05 | USD | Install - Gametime Ft Myers |
| Total: Nadelman, David C (Dave) | | | | | 216.20 | 0.00 | 216.20 | | |
| Grand Total: US:Mileage/km | | | | | 216.20 | 0.00 | 216.20 | | |
| Nadelman, David C (Dave) | 07-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:PARKING | 5.8 | 0.00 | 5.80 | USD | Install - Gametime (TOLLS) |
| Nadelman, David C (Dave) | 08-Dec-2015 | 3 F&B Estimated Travel & | B60834 | US:PARKING | 5.8 | 0.00 | 5.80 | USD | Install - Gametime (TOLLS) |
| Total: Nadelman, David C (Dave) | | | | | 11.60 | 0.00 | 11.60 | | |
| Grand Total: US:PARKING | | | | | 11.60 | 0.00 | 11.60 | | |
| Labor Automatic | 25-Jan-2016 | 1 F&B Project Mgmt p/Hr | B60246 | | 0 | 0.00 | 243.10 | USD | B60246(1 F&B Project Mgmt p/Hr) - 2 hrs billed at 121.55USD/hr |
| Labor Automatic | 26-Jan-2016 | 2 F&B POS Services per Hr | B60232 | | 0 | 0.00 | 1,483.30 | USD | B60232(2 F&B POS Services per Hr) - 14 hrs billed at 105.9rUSD/hr |
| Total: Labor Automatic | | | | | 0.00 | 0.00 | 1,726.40 | | |
| Grand Total: | | | | | 0.00 | 0.00 | 1,726.40 | | |
| Grand Total: | | | | | 227.80 | 0.00 | 1,954.20 | | |

# COMPOSITE
# EXHIBIT E

# ORACLE®

# INVOICE

Federal Tax ID: 94-2805249

| INVOICE NUMBER | 6514284 |
|---|---|
| INVOICE DATE | 29-Aug-2016 |
| YOUR P.O. NUMBER | POEF 300529496 |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 28-Sep-2016 |

BILL TO :
A & E Adventures LLC
c/o Gametime
Mr. Mike Abecassis
1600 E 8TH AVE
SPACE A-147
TAMPA, FL 33605
United States

**PAYMENT INSTRUCTIONS:**

| REFERENCE | 6514284 | ON YOUR REMITTANCE |
|---|---|---|

MAIL CHECKS TO:   Oracle America, Inc.
P.O. Box 203448
Dallas TX 75320-3448

WIRE TRANSFERS TO:   WELLS FARGO BANK
ABA    121000248
ACCT  4522-020841

SHIP TO :
A & E Adventures LLC
c/o Gametime
Mr. Mike Abecassis
1600 E 8TH AVE
SPACE A-147
TAMPA, FL 33605
United States

FOR BILLING QUESTIONS, CALL: (888) 803-7414 OR EMAIL: COLLECTIONS_US@ORACLE.COM

| ORACLE SALESPERSON | ORACLE ORDER NUMBER | CUSTOMER CONTACT | END USER |
|---|---|---|---|
| Moreno, Ana Corina (Corina) | 300529496 | Mike Abecassis | A & E Adventures LLC c/o Gametime |

| ITEM NO. | DESCRIPTION | QTY/ NO. OF USERS | TAX | EXTENDED AMOUNT |
|---|---|---|---|---|
| 1 | B80282(1.F&B POS Services per Hr) - 18 hrs billed at 99.47USD/hr | 1 | N | 1,790.46 |
| 2 | B80285(2.F&B Project Mgmt p/Hr) - 1 hrs billed at 114.11USD/hr | 1 | N | 114.11 |
| 3 | B81074(3.HW Install Components) - 361.8 USD | 1 | N | 361.80 |
| 4 | B81083(4.HW Install Servers) - 80.4 USD | 1 | N | 80.40 |

| SPECIAL INSTRUCTIONS: | SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|---|
| | 2,734.90 | 0.00 | 2,734.90 |
| | Less Payments | | 0.00 |
| | Credits/Adjustments | | 0.00 |
| | Outstanding Balance as of 17-Sep-2016 | | 2,734.90 |



# INVOICE

Federal Tax ID: 94-2805249

| INVOICE NUMBER | 6514284 |
|---|---|
| INVOICE DATE | 29-Aug-2016 |
| YOUR P.O. NUMBER | POEF_300529496 |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 28-Sep-2016 |

| 5 | US:PARKING | 1 | N | 5.80 |
|---|---|---|---|---|
| 6 | US:DINNER | 1 | N | 6.17 |
| 7 | US:Mileage/Km | 1 | N | 276.48 |
| 8 | US:HOTEL | 1 | N | 99.68 |

| SPECIAL INSTRUCTIONS: | SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|---|
| | 2,734.90 | 0.00 | 2,734.90 |
| | Less Payments | | 0.00 |
| | Credits/Adjustments | | 0.00 |
| | Outstanding Balance as of 17-Sep-2016 | | 2,734.90 |



**Oracle Services**
Invoice Expenditure Details

Report Date:8/29/2016
Page 1 of 2

| Project Number: | 300529496 |
|---|---|
| Project Name: | HGBU 9002271 Gametime |
| PO Number/Agreement: | POEF_300529496 |
| AR Invoice Number: | 6514284 |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 25-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:DINNER | 6.17 | 0.00 | 0.00 | 6.17 | USD | Gametime Tampa Upgrade |
| **Total:** Nadelman, David C (Dave) | | | | | 6.17 | 0.00 | | 6.17 | | |
| **Grand Total: US:DINNER** | | | | | 6.17 | 0.00 | | 6.17 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 26-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:HOTEL | 99.68 | 0.00 | 0.00 | 99.68 | USD | Gametime Upgrade |
| **Total:** Nadelman, David C (Dave) | | | | | 99.68 | 0.00 | | 99.68 | | |
| **Grand Total: US:HOTEL** | | | | | 99.68 | 0.00 | | 99.68 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 25-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 138.24 | 0.00 | 0.00 | 138.24 | USD | Gametime Tampa |
| Nadelman, David C (Dave) | 25-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 138.24 | 0.00 | 0.00 | 138.24 | USD | Gametime Tampa |
| **Total:** Nadelman, David C (Dave) | | | | | 276.48 | 0.00 | | 276.48 | | |
| **Grand Total: US:Mileage/Km** | | | | | 276.48 | 0.00 | | 276.48 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 25-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:PARKING | 2.9 | 0.00 | 0.00 | 2.90 | USD | Gametime Tampa Toll |
| Nadelman, David C (Dave) | 26-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:PARKING | 2.9 | 0.00 | 0.00 | 2.90 | USD | Gametime Tampa Toll |
| **Total:** Nadelman, David C (Dave) | | | | | 5.80 | 0.00 | | 5.80 | | |
| **Grand Total: US:PARKING** | | | | | 5.80 | 0.00 | | 5.80 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Labor Automatic | 26-Aug-2016 | 1.F&B POS Services per Hr | B80282 | | 0 | 0.00 | 0.00 | 1,790.46 | | B80282(1.F&B POS Services per Hr) - 18 hrs billed at 99.47USD/hr |



**Oracle Services**
Invoice Expenditure Details

| Project Number: | 300529496 |
|---|---|
| Project Name: | HGBU 9002271 Gametime |
| PO Number/Agreement: | POEF_300529496 |
| AR Invoice Number: | 6514284 |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Labor Automatic | 26-Aug-2016 | 4.HW Install Servers | B81083 | | 0 | 0.00 | 0.00 | 80.40 | | B81083(4.HW Install Servers) - 80.4 USD |
| Labor Automatic | 26-Aug-2016 | 2.F&B Project Mgmt p/Hr | B80285 | | 0 | 0.00 | 0.00 | 114.11 | | B80285(2.F&B Project Mgmt p/Hr) - 1 hrs billed at 114.11USD/hr |
| Labor Automatic | 26-Aug-2016 | 3.HW Install Components | B81074 | | 0 | 0.00 | 0.00 | 361.80 | | B81074(3.HW Install Components) - 361.8 USD |

| | Qty | Hrs | Billed Amount |
|---|---|---|---|
| **Total: Labor Automatic** | 0.00 | 0.00 | 2,346.77 |

| | Qty | Hrs | Billed Amount |
|---|---|---|---|
| **Grand Total:** | 0.00 | 0.00 | 2,346.77 |

| | Qty | Hrs | Billed Amount |
|---|---|---|---|
| **Grand Total:** | 388.13 | 0.00 | 2,734.90 |

# ORACLE

# INVOICE

Federal Tax ID: 94-2805249

| INVOICE NUMBER | 6517301 |
|---|---|
| INVOICE DATE | 30-Sep-2016 |
| YOUR P.O. NUMBER | NA |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 30-Oct-2016 |

BILL TO :
A & E Adventures LLC
c/o Gametime
Mr. Michael Abecassis
5701 SUNSET DR STE 330
SOUTH MIAMI, FL 33143
United States

**PAYMENT INSTRUCTIONS:**

| REFERENCE | 6517301 | ON YOUR REMITTANCE |
|---|---|---|
| MAIL CHECKS TO: | | Oracle America, Inc.<br>P.O. Box 203448<br>Dallas TX 75320-3448 |
| WIRE TRANSFERS TO: | | WELLS FARGO BANK<br>ABA   121000248<br>ACCT 4522-020841 |

SHIP TO :
A & E Adventures LLC
c/o Gametime
Mr. Michael Abecassis
5701 SUNSET DR STE 330
SOUTH MIAMI, FL  33143
United States

FOR BILLING QUESTIONS, CALL: (888) 803-7414 OR EMAIL: COLLECTIONS_US@ORACLE.COM

| ORACLE SALESPERSON | ORACLE ORDER NUMBER | CUSTOMER CONTACT | END USER |
|---|---|---|---|
| Moreno, Ana Corina (Corina) | 300529497 | Michael Abecassis | A & E Adventures LLC c/o Gametime |

| ITEM NO. | DESCRIPTION | QTY/ NO. OF USERS | TAX | EXTENDED AMOUNT |
|---|---|---|---|---|
| 1 | B80282(1.F&B POS Services per Hr) - 16 hrs billed at 99.47USD/hr | 1 | N | 1,591.52 |
| 2 | B80285(2.F&B Project Mgmt p/Hr) - 3 hrs billed at 114.11USD/hr | 1 | N | 342.33 |
| 3 | B81074(3.HW Install Components) - 361.8 USD | 1 | N | 361.80 |
| 4 | B81083(4.HW Install Servers) - 80.4 USD | 1 | N | 80.40 |

| SPECIAL INSTRUCTIONS: | SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|---|
| | 2,516.29 | 0.00 | 2,516.29 |
| | Less Payments | | 0.00 |
| | Credits/Adjustments | | 0.00 |
| | Outstanding Balance as of 03-Nov-2016 | | 2,516.29 |

ORACLE

# INVOICE

Federal Tax ID: 94-2805249

| | |
|---|---|
| INVOICE NUMBER | 6517301 |
| INVOICE DATE | 30-Sep-2016 |
| YOUR P.O. NUMBER | NA |
| PAYMENT TERMS | NET 30 DAYS |
| DUE DATE | 30-Oct-2016 |

| | | | | |
|---|---|---|---|---|
| 5 | US:PARKING | 1 | N | 9.56 |
| 6 | US:Mileage/Km | 1 | N | 130.68 |

| SPECIAL INSTRUCTIONS: | SUBTOTAL | TAX | TOTAL(USD) |
|---|---|---|---|
| | 2,516.29 | 0.00 | 2,516.29 |
| | **Less Payments** | | 0.00 |
| | **Credits/Adjustments** | | 0.00 |
| | **Outstanding Balance as of 03-Nov-2016** | | 2,516.29 |

# ORACLE

**Oracle Services**
Invoice Expenditure Details

| Project Number: | 300529497 |
|---|---|
| Project Name: | HGBU 9002284 Gametime |
| PO Number/Agreement: | NA |
| AR Invoice Number: | 6517301 |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Diaz, Daniel J | 28-Jun-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 46.98 | 0.00 | 0.00 | 46.98 | USD | NB - Gametime Miami. Installation of RES on server provided by Customer |
| Diaz, Daniel J | 28-Jun-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 46.98 | 0.00 | 0.00 | 46.98 | USD | NB - Gametime Miami. Installation of RES on server provided by Customer |
| **Total: Diaz, Daniel J** | | | | | 93.96 | 0.00 | | 93.96 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 11-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 18.36 | 0.00 | 0.00 | 18.36 | USD | Gametime Miami Upgrade |
| Nadelman, David C (Dave) | 12-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:Mileage/Km | 18.36 | 0.00 | 0.00 | 18.36 | USD | Gametime Miami Upgrade |
| **Total: Nadelman, David C (Dave)** | | | | | 36.72 | 0.00 | | 36.72 | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Grand Total: US:Mileage/Km** | | | | | 130.68 | 0.00 | | 130.68 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Nadelman, David C (Dave) | 11-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:PARKING | 1.56 | 0.00 | 0.00 | 1.56 | USD | GameTime Upgrade |
| Nadelman, David C (Dave) | 11-Jul-2016 | 5.F&B Estimated Travel & | B80834 | US:PARKING | 8 | 0.00 | 0.00 | 8.00 | USD | Gametime Upgrade |
| **Total: Nadelman, David C (Dave)** | | | | | 9.56 | 0.00 | | 9.56 | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Grand Total: US:PARKING** | | | | | 9.56 | 0.00 | | 9.56 | | |

| Consultant | Item Date | Task Number | Task Name | Type | Qty | Hrs | Rate | Billed Amount | Inv Curr | Explanations/Comments |
|---|---|---|---|---|---|---|---|---|---|---|
| Labor Automatic | 30-Sep-2016 | 3.HW Install Components | B81074 | | 0 | 0.00 | 0.00 | 361.80 | | B81074(3.HW Install Components) - 361.8 USD |
| Labor Automatic | 30-Sep-2016 | 4.HW Install Servers | B81083 | | 0 | 0.00 | 0.00 | 80.40 | | B81083(4.HW Install Servers) - 80.4 USD |
| Labor Automatic | 30-Sep-2016 | 1.F&B POS Services per Hr | B80282 | | 0 | 0.00 | 0.00 | 1,591.52 | | B80282(1.F&B POS Services per Hr) - 16 hrs billed at 99.47USD/hr |
| Labor Automatic | 30-Sep-2016 | 2.F&B Project Mgmt p/Hr | B80285 | | 0 | 0.00 | 0.00 | 342.33 | | B80285(2.F&B Project Mgmt p/Hr) - 3 hrs billed at 114.11USD/hr |
| **Total: Labor Automatic** | | | | | 0.00 | 0.00 | | 2,376.05 | | |

**ORACLE**

**Oracle Services**
Invoice Expenditure Details

Report Date:10/3/2016
Page 2 of 2

| Project Number: | 300529497 |
|---|---|
| Project Name: | HGBU 9002284 Gametime |
| PO Number/Agreement: | NA |
| AR Invoice Number: | 6517301 |

| | | | |
|---|---|---|---|
| Grand Total: | 0.00 | 0.00 | 2,376.05 |

| | | | |
|---|---|---|---|
| Grand Total: | 140.24 | 0.00 | 2,516.29 |

# EXHIBIT F

# ORACLE

## ORDERING DOCUMENT

Oracle America, Inc.
500 Oracle Parkway
Redwood Shores, CA
94065

| | | | |
|---|---|---|---|
| **Name** | M&A Group LLC | **Contact** | Mike Abecassis |
| **Address** | 10037 Gulf Center Dr | **Phone Number** | 954-6938778 |
| | Fort Myers  FL | **Email Address** | ma@aa.bz |
| | 33913 | | |

**Property Name**   Gametime Fort Myers

| Other Fees | Quantity | |
|---|---|---|
| Oracle Hospitality Food and Beverage Point of Sale Implementation Services - per Hour | 4 | 398.66 |
| Oracle Hospitality Food and Beverage Project Management - per Hour | 1 | 114.34 |
| | Other Fees | 513.00 |

| Fee Description | | Net Fee |
|---|---|---|
| Other Fees | | 513.00 |
| Total Fees | | 513.00 |

CPQ-280244 - 1

Issued by Oracle America, Inc.   15-FEB-2017

Page 1  of 3

## A. Agreement and Modifications to the Agreement

### 1. Agreement

This order incorporates by reference the terms of the Online Transactional Oracle Master Agreement and Schedule S - Services v091514 (the "Master Agreement") which may be viewed at http://www.oracle.com/us/corporate/contracts/consulting-services/index.html. The defined terms in the Master Agreement shall have the same meaning in this order unless otherwise specified herein.

## B. General Terms

### 1. Summary of Fees

Listed above is a summary of net fees due under this order. All fees on this order are in US Dollars and are exclusive of any applicable shipping charges or applicable taxes.

For Consulting Services, fees for fixed price services and/or estimates for Time and Materials services will also be listed in the summary above.

### 2. Commencement Date

For Consulting Services, the Commencement Date shall be the Effective Date of this order.

### 3. Pricing Invoicing and Payment Obligation

Fees for Consulting Services may be invoiced i) in advance of service performance for fixed fee services; or ii) monthly as services are performed for Time and Materials services which are identified above as "per Hour". In addition to the service fees listed in this order, for Consulting Services, Oracle will invoice You for travel and out-of-pocket expenses, if any, related to the performance of services. Any amounts specified in this order for expenses are estimates and are intended only to be for Your budgeting purposes. Such expenses will be invoiced as incurred.

Notwithstanding anything to the contrary, in addition to the service fees listed in this order, Oracle will invoice you for Travel Time for resources providing services under this order. Travel Time is defined as time in excess of six hours for a resource to travel from his/her place of residence to Your site and is subject to the Oracle Travel Policy. You will be invoiced at the Travel Time rates in your order. If your order does not include Travel Time rates then your order will be amended via the Change Control Process to include such Travel Time rates.

### 4. Fees

Once placed, Your order shall be non-cancelable and the sums paid nonrefundable, except as provided in the Master Agreement.

Notwithstanding any provision to the contrary in the Master Agreement, all fees payable to Oracle under this order are due immediately upon receipt of the invoice.

### 5. Order of Precedence

In the event of inconsistencies between the terms contained in this order and the Master Agreement, this order shall take precedence. This order will control over the terms contained in any purchase order.

### 6. Effective Date

The effective date of this order is Your signature date.

### 7. Offer Validity

This order is valid through 28-FEB-2017, and shall become binding upon execution by You and acceptance by Oracle.

### 8. Customer Reference

Oracle may refer to You as an Oracle customer of the ordered Products and Service Offerings in sales presentations, marketing vehicles and activities.

## C. Terms Specific to Consulting Services

### 1. Rights Granted / Restrictions

a. Upon payment for Services, You have the non-exclusive, non-assignable, royalty free, perpetual, limited right to use for Your internal business operations anything developed by Oracle and delivered to You under this order ("deliverables"); however, certain deliverables may be subject to additional license terms provided in this order.

b. You may allow Your agents and contractors (including, without limitation, outsourcers) to use deliverables for Your internal business operations and You are responsible for their compliance with the Master Agreement and this order in such use.

c. Services provided may be related to Your license to use Products owned or distributed by Oracle which You acquire under a separate order. The agreement referenced in that order shall govern Your use of such Products.

### 2. Service Descriptions

Consulting Services You have ordered under this order are described in and governed by the Consulting Services service descriptions found in the Consulting Services section at www.oracle.com/contracts

CPQ-280244 - 1

Issued by Oracle America, Inc.    15-FEB-2017

Page 2 of 3

**3. Assumptions and Obligations**

a. You will identify a designated contact to Oracle, with the appropriate level of authority, to set priorities, coordinate activities and resolve conflicts between Your teams to support the performance of the Consulting Services.

b. Upon Oracle's reasonable request, You agree to provide Oracle access to relevant resources with knowledge to support the performance of the Consulting Services.

c. You will provide for all Oracle resources performing Consulting Services at Your location a safe and healthful workspace (e.g., a workspace that is free from recognized hazards that are causing, or likely to cause, death or serious physical harm, a workspace that has proper ventilation, sound levels acceptable for resources performing services in the workspace, and ergonomically correct work stations, etc.).

d. Any request for changes in Consulting Services must be in writing; this includes changes in project plans, scope, specifications, schedule, designs, requirements, service deliverables, software environment, hardware environment or any other aspect of Your order. Oracle shall not be obligated to perform tasks related to changes in time, scope, cost, or contractual obligations until You and Oracle agree in writing to the proposed change in an amendment to Your order.

e. As required by U.S. Department of Labor regulations (20 CFR 655.734), You will allow Oracle to post a notice regarding Oracle H-1B employee(s) at the work site prior to the employee's arrival on site.

**4. Time and Materials ("T&M") Services**

a. Consulting Services identified above as "Per Hour" are provided on a time and materials ("T&M") basis; that is, You shall pay Oracle at for all of the time spent performing such services at the rate specified above, plus materials, taxes and expenses. All fees and expenses will be invoiced monthly.

b. For Consulting Services identified above as "Per Hour", the fees specified in the table above are estimates for labor and are intended only to be for Your budgeting and Oracle's resource scheduling purposes; these estimates do not include taxes. Oracle will invoice You for actual time spent performing the services, plus materials, taxes and expenses; such invoice may exceed the total estimated amounts documented above. Once fees for these services reach the estimate, Oracle will cooperate with You to provide continuing services on a T&M basis.

**5. Warranties, Disclaimers and Exclusive Remedies**

a. Oracle warrants that Services will be provided in a professional manner consistent with industry standards. You must notify Oracle of any warranty deficiencies within 90 days from performance of the deficient Services.

b. FOR ANY BREACH OF THE WARRANTY, YOUR EXCLUSIVE REMEDY AND ORACLE'S ENTIRE LIABILITY SHALL BE THE RE-PERFORMANCE OF THE DEFICIENT SERVICES, OR, IF ORACLE CANNOT SUBSTANTIALLY CORRECT THE DEFICIENCY IN A COMMERCIALLY REASONABLE MANNER, YOU MAY END THE DEFICIENT SERVICES AND RECOVER THE FEES YOU PAID TO ORACLE FOR THE DEFICIENT SERVICES.

c. TO THE EXTENT NOT PROHIBITED BY LAW, THIS WARRANTY IS EXCLUSIVE AND THERE ARE NO OTHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

| M&A Group LLC | |
| --- | --- |
| Signature | *Mike Abecassis* |
| Name | Mike Abecassis |
| Title | C.E.O. |
| Signature Date | Feb 15, 2017 |

## BILL TO / SHIP TO INFORMATION

| Bill To | | Ship To | |
| --- | --- | --- | --- |
| Customer Name | M&A Group LLC c/o Gametime Fort Myers | Customer Name | M&A Group LLC c/o Gametime Fort Myers |
| Customer Address | 10037 Gulf Center Dr Fort Myers  FL 33913 | Customer Address | 10037 Gulf Center Dr Fort Myers  FL 33913 |
| Contact Name | Mike Abecassis | Contact Name | Mike Abecassis |
| Contact Phone | 954-6938778 | Contact Phone | 954-6938778 |
| Contact Email | ma@aa.bz | Contact Email | ma@aa.bz |

CPQ-280244 - 1

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>A&E ADVENTURES LLC et al, A&E ADVENTURES LLC, et al</u>
 Plaintiff
        vs.
<u>ORACLE AMERICA, INC.</u>
 Defendant

---

**II.    TYPE OF CASE**

- ☐ Condominium
- ☒ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
    - ☐ Business governance
    - ☐ Business torts
    - ☐ Environmental/Toxic tort
    - ☐ Third party indemnification
    - ☐ Construction defect
    - ☐ Mass tort
    - ☐ Negligent security
    - ☐ Nursing home negligence
    - ☐ Premises liability – commercial
    - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
    - ☐ Commercial foreclosure $0 - $50,000
    - ☐ Commercial foreclosure $50,001 - $249,999
    - ☐ Commercial foreclosure $250,000 or more
    - ☐ Homestead residential foreclosure $0 – 50,000
    - ☐ Homestead residential foreclosure $50,001 - $249,999
    - ☐ Homestead residential foreclosure $250,000 or more
    - ☐ Non-homestead residential foreclosure $0 - $50,000
    - ☐ Non-homestead residential foreclosure $50,001 - $249,999

- ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
    - ☐ Malpractice – business
    - ☐ Malpractice – medical
    - ☐ Malpractice – other professional
- ☐ Other
    - ☐ Antitrust/Trade Regulation
    - ☐ Business Transaction
    - ☐ Circuit Civil - Not Applicable
    - ☐ Constitutional challenge-statute or ordinance
    - ☐ Constitutional challenge-proposed amendment
    - ☐ Corporate Trusts
    - ☐ Discrimination-employment or other
    - ☐ Insurance claims
    - ☐ Intellectual property
    - ☐ Libel/Slander
    - ☐ Shareholder derivative action
    - ☐ Securities litigation
    - ☐ Trade secrets
    - ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.    **REMEDIES SOUGHT** (check all that apply):
        ☒   Monetary;
        ☐   Non-monetary declaratory or injunctive relief;
        ☐   Punitive

IV.     **NUMBER OF CAUSES OF ACTION: (      )**
        (Specify)

        <u>4</u>

V.      **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☒   Yes
        ☐   No

VI.     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒   No
        ☐   Yes – If "yes" list all related cases by name, case number and court:

VII.    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒   Yes
        ☐   No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Howard R. Behar</u>      FL Bar No.: <u>54471</u>
        Attorney or party
                                                            (Bar number, if attorney)

<u>Howard R. Behar</u>      <u>02/15/2018</u>
        (Type or print name)                        Date

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. 2018-004766-CA-01

A&E ADVENTURES LLC, a Florida limited
liability company, and M&A GROUP, LLC, a
Florida limited liability company,

        Plaintiffs,

v.                             CLASS REPRESENTATION

ORACLE AMERICA, INC., a Delaware
corporation,

        Defendant.

_____/

## SUMMONS ON A CORPORATION

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the Complaint,
Plaintiff's in this action on Defendant: **ORACLE AMERICA, INC., a Delaware corporation,**

By serving its Registered Agent:    **CORPORATE SERVICE COMPANY**
                                   **1201 HAYS STREET**
                                   **TALLAHASSEE, FL 32301**

    Each defendant is required to serve written defenses to the complaint or petition on
Plaintiff's attorney, to wit:

HOWARD R. BEHAR and/or SAMUEL M. SHELDON
hrb@beharlegal.com; sms@beharlegal.com; np@beharlegal.com
THE BEHAR LAW FIRM, P.A.
17501 BISCAYNE BOULEVARD, SUITE 460
AVENTURA, FL 33160
786-735-3300

1

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court whether before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Dated On: _____, 2018          Howard C. Forman, Clerk of Court

By _____

As Deputy Clerk

2

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.
Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).
Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

HOWARD R. BEHAR, ESQ.
THE BEHAR LAW FIRM, P.A.
17501 BISCAYNE BOULEVARD, SUITE 460
AVENTURA, FL 33160
786-735-3300
hrb@beharlegal.com; sms@beharlegal.com; np@beharlegal.com

In accordance with the Americans with Disabilities Act of 1990 (ADA), disabled persons who, because of their disabilities, need special accommodation to participate in this proceeding should contact the ADA Coordinator no later than SEVEN (7) business days prior to such proceeding.

3